Robb C. Adkins (SBN: 194576)
radkins@winston.com
Charles J. Moll III (SBN: 98872)
cmoll@winston.com
Krista M. Enns (SBN: 206430)
kenns@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA  94111-5802
Telephone:     (415) 591-1000
Facsimile:      (415) 591-1400

Attorneys for Plaintiff
RUSSELL CITY ENERGY COMPANY, LLC
a Delaware limited liability company

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RUSSELL CITY ENERGY COMPANY, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF HAYWARD, a California municipal corporation,<br><br>Defendant. | **Case No. 3:14-cv-3102**<br><br>**COMPLAINT** |

Plaintiff Russell City Energy Company, LLC ("RCEC") alleges as follows:

**INTRODUCTION**

1. RCEC is the developer, constructer, owner, and operator of the Russell City Energy Center ("Energy Center").

2. In 2005, in order to secure that the Energy Center would be built in Hayward, Defendant City of Hayward ("City") entered into a contract (the "Agreement") with a party that has assigned all of its interests in the Agreement to RCEC.

3. Pursuant to the terms of the Agreement, among other things, RCEC was required to make a $10,000,000 payment to the City, and in return the City "acknowledge[d] that payments to be made by [RCEC] as contemplated in this Agreement comprise all payments to be made to the City by [RCEC], its parents or affiliates in connection with the development, construction, ownership and operation of [the Energy Center] and the City shall not impose any other levies, fees, taxes, contributions, or charges on [RCEC], its parents or affiliates other than such levies, fees, taxes, contributions, or charges generally applicable to similarly situated owners of real property located in the City."

4. In reliance on the City's promises and representations in the Agreement, RCEC acquired real property, entitlements, permits and other assets necessary for development, began construction of the Energy Center in October 2010, incurred tens of millions of dollars in construction-related costs, and made its $10,000,000 payment to the City.

5. After construction began, and despite its contractual agreement that it "shall not impose any … taxes" on RCEC, the City informed RCEC that it intended to impose a Utility Users Tax ("UUT") upon RCEC, in direct violation of the Agreement.

6. The City sought to justify its breach and repudiation of the Agreement by asserting that the UUT ordinance, which was adopted by Hayward voters in 2009, allowed the City to impose charges on RCEC, which were in direct conflict with the express terms of the Agreement prohibiting the City from imposing any additional levies, fees, taxes, contributions, or charges on RCEC or the Energy Center.

7. RCEC responded by demanding that the City honor the Agreement, which prohibits such an action. Notwithstanding RCEC's substantial performance of its obligations and covenants under the Agreement and its reliance on the City's promises therein, an authorized representative of the City informed RCEC on April 4, 2011 that "the UUT applies to the energy center's plant's operations."

8. During the construction period, RCEC began to have to make monthly payments to cover UUT assessments, in express violation of the Agreement.

9. Because of the City's intentional breach and deliberate repudiation of its promises, RCEC is entitled to an order of this Court specifically enforcing the contract or, in the alternative, damages.

## PARTIES

10. RCEC is a Delaware limited liability company having its principal place of business in Houston, Texas.

11. The members of RCEC are Calpine Russell City, LLC ("Calpine Russell City") and Aircraft Services Corporation ("Aircraft Services"). Calpine Russell City is a Delaware limited liability company having its principal place of business in Houston, Texas. The sole member of Calpine Russell City is Calpine Development Holdings, Inc., which is a Delaware corporation having its principal place of business in Houston, Texas. Aircraft Services is a Nevada corporation having its principal place of business in Stamford, Connecticut.

12. The City is a California municipal corporation established by charter dated March 7, 1956. The City's principal place of business is in Hayward, California.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

13. This Court has subject matter jurisdiction over this entire action pursuant to 28 U.S.C. § 1332(a) because the parties to this action are citizens of different states. The parties are of diverse citizenship.

14. The Court also has subject matter jurisdiction over certain of the claims alleged herein pursuant to Article III, section 2, of the United States Constitution and 28 U.S.C. § 1331, in that the action arises under the Contract Clause of the United States Constitution, and RCEC's right

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

to relief depends on the resolution of substantial questions of federal law.

15. The Court has subject matter jurisdiction over other claims alleged herein pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. §§ 1983 and 1988(b), which protect against the violation of constitutional rights.

16. The events giving rise to this action, including the alleged breaches of contract and other unlawful and wrongful acts committed by the City, occurred in whole or in part in the Northern District of California.

17. The amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

18. The Court has personal jurisdiction over the City because it is a California corporation with its principal place of business in the Northern District of California.

19. The Court has jurisdiction to grant declaratory relief as alleged and prayed for in this Complaint under 28 U.S.C. § 2201 and 2202, and Federal Rule of Civil Procedure 57.

20. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b).

21. This case is properly assigned to the San Francisco Division or Oakland Division, pursuant to Civil L.R. 3-2(c) and 3-2(d).

## FACTUAL BACKGROUND

**The Agreement Between the City and RCEC.**

22. On or about October 21, 2005, Russell City Energy Center, LLC and the City entered into the Agreement. A true and correct copy of the Agreement is attached to this Complaint as Exhibit A.

23. On or about August 11, 2006, Russell City Energy Center, LLC as the seller, and RCEC, as the buyer, entered into an Asset Purchase Agreement ("APA"). Among other things, the APA transferred the rights and assets related to the Energy Center, and rights under, among other things, the Agreement with the City, from Russell City Energy Center, LLC to RCEC.

24. The parties amended the Agreement ("Amendment") on or about July 25, 2007. A true and correct copy of the Amendment is attached to this Complaint as Exhibit B.

25. Unless otherwise stated, for all subsequent references to the Agreement in this Complaint, the parties to the Agreement are RCEC and the City.

26. The purpose of the Agreement was, among other things, to facilitate RCEC's development and operation of a natural gas-fired, combined cycle electric generating facility in Hayward, California, known as the Energy Center.

27. In addition to the development of the Energy Center, a further purpose of the Agreement was the City's desire to receive other payments and benefits as specified in the Agreement, including a payment of $10 million, ostensibly "for design and construction of a new library."

28. As set forth in section 6(c) of the Agreement: "In the interest of clarity, the Parties acknowledge that payments to be made by [RCEC] as contemplated in this Agreement comprise all payments to be made to the City by [RCEC], its parents or affiliates in connection with the development, construction, ownership and operation of [the Energy Center] and the City shall not impose any other levies, fees, taxes, contributions, or charges on [RCEC], its parents or affiliates other than such levies, fees, taxes, contributions, or charges generally applicable to similarly situated owners of real property located in the City."

**RCEC Begins Construction of the Energy Center and Incurs Significant Expense.**

29. In reliance on the Agreement and the City's promises and representations therein, RCEC acquired real property, entitlements, permits and other assets necessary for development, began construction of the Energy Center in October 2010, and incurred tens of millions of dollars in construction costs, permit fees, professional and design fees and other expenses to perform its obligations under the Agreement.

30. In addition to RCEC incurring construction and development costs, RCEC also made a payment to the City of $10,000,000 pursuant to the terms of the Agreement on or about October 11, 2011, ostensibly for "the City's design and construction of a new library."

**The City Notifies RCEC that It Intends to Apply the UUT Ordinance to RCEC in Breach of the Agreement.**

31.     In or about March 2009, the Hayward City Council ("City Council") placed a measure on the May 19, 2009 ballot asking voters to approve a Utility Users Tax Ordinance.

32.     On or about June 19, 2009, the City Council certified the vote and the UUT ordinance became effective.

33.     Notwithstanding RCEC's substantial performance of its obligations and covenants under the Agreement, an authorized representative of the City sent an email to RCEC on April 4, 2011 stating: "we have reviewed the cooperation agreement (as last amended 7/25/07) and the utility users tax ordinance (adopted by Hayward voters 5/19/09).  We conclude the UUT applies to the energy center's plant's operations."

34.     This action by the City was in bad faith and constitutes an intentional breach and deliberate anticipatory repudiation of its promises, covenants and obligations made under the Agreement.

**Notice of Claim**

35.     On April 4, 2012, RCEC presented a claim to the City of Hayward pursuant to California Government Code § 810 *et seq.,* which sets forth: "RCEC hereby asserts and reserves any and all of its rights and remedies with respect to any and all claims or causes of action arising from or relating to the [] Agreement, including, without limitation, any claims for anticipatory and/or actual breach of contract against the City under the [] Agreement relating to the City's potential assessment of the City's recently enacted Utility Users Tax (the 'UUT') against RCEC, as expressed in the [April 4, 2011] email . . . ."

36.     The City failed to take any action on RCEC's claim within 45 days of filing.  The claim therefore is deemed denied by operation of law pursuant to California Government Code § 911.6(c).  RCEC and the City entered into a Tolling Agreement and Tolling Agreement Amendment making any lawsuit against the City related to the submitted claim timely filed so long as it is filed on or before July 9, 2014.

**RCEC Has Had to Make UUT Payments in Breach of the Agreement.**

37. On a monthly basis since at least approximately February 2013, RCEC has made payments to cover UUT assessments.

### FIRST CLAIM FOR RELIEF
(Breach of Contract)

38. RCEC repeats and realleges each and every allegation in paragraphs 1 through 37 of this Complaint as though fully set forth here.

39. The City and RCEC (by assignment) are parties to the Agreement.

40. At the time that RCEC and the City entered into the Agreement, the consideration to be performed by RCEC under the Agreement was adequate and the Agreement was fair, just, and reasonable.

41. A material aspect of the bargain between RCEC and the City as set forth in the Agreement was the City's promise set forth in section 6(c) of the Agreement: "In the interest of clarity, the Parties acknowledge that payments to be made by [RCEC] as contemplated in this Agreement comprise all payments to be made to the City by [RCEC], its parents or affiliates in connection with the development, construction, ownership and operation of [the Energy Center] and the City shall not impose any other levies, fees, taxes, contributions, or charges on [RCEC], its parents or affiliates other than such levies, fees, taxes, contributions, or charges generally applicable to similarly situated owners of real property located in the City."

42. This Agreement had sufficiently clear and definite terms, including that RCEC would not be subject to certain taxes as stated in the Agreement.

43. RCEC has performed the conditions, conditions precedents, obligations and covenants required of it under the Agreement as amended through the date of the filing of this Complaint.

44. The City first breached the Agreement on or about April 4, 2011, when it asserted that RCEC and the Energy Center is and would be required in the future to pay the taxes set forth by the UUT Ordinance, which is expressly prohibited by the terms of the Agreement.

45. The City also has breached the Agreement each time that RCEC had to make payments to cover UUT assessments, which are expressly prohibited by the terms of the Agreement.

46. As a result of the City's breaches of the Agreement, RCEC has suffered and will continue to suffer damages. Among other things, RCEC has been damaged generally and specially through the loss and the potential future loss of its funds advanced to plan, design, permit, construct, test and operate the Energy Center in reliance on the City's promises in the Agreement.

47. RCEC has also been damaged by paying the $10,000,000 payment to the City, ostensibly "for the City's design and construction of a new library" as required under the Agreement.

48. Had RCEC known that the City would breach the Agreement, RCEC would not have entered into the Agreement with the City, expended the same amount of funds and effort needed to develop the Energy Center, made the $10,000,000 payment to the City, or taken other actions in reliance on the City's promises as set forth in the Agreement.

49. In addition to its express breaches of the Agreement, the City's conduct as alleged in this Agreement is a breach of the implied covenant of good faith and fair dealing implied in every contract. If the City's wrongful breach and repudiation of the implied covenant are allowed to stand, the City's bad faith conduct will unlawfully, unfairly and unreasonably deprive RCEC of a substantial portion of the benefits it bargained for under the Agreement, and for which RCEC in good faith paid fair and good consideration to the City.

50. Remedies at law being inadequate, RCEC seeks specific performance of the Agreement.

51. For all of these reasons, RCEC seeks an order from this Court directing specific performance of the Agreement.

52. In the alternative, RCEC seeks damages in an amount subject to proof at trial.

**SECOND CLAIM FOR RELIEF**
(Promissory Estoppel)

53. RCEC repeats and realleges each and every allegation in paragraphs 1 through 52 of this Complaint as though fully set forth here.

54. On or about October 21, 2005, the City represented to RCEC that it would not impose any additional levies, fees, taxes, contributions, or charges on RCEC in connection with the operation of the Energy Center other than as expressly allowed in the Agreement. The City

1 warranted its authority to make such promises and covenants in the Agreement.

2   55.   In making such representations, the City knew or should have known that RCEC would reasonably rely on and be induced by the City's representations to begin development and construction of the Energy Center.

   56.   In making such representations, the City knew or should have known that RCEC would reasonably rely on and be induced by the City's representations to make payments to the City called for under the Agreement, including but not limited to the $10,000,000 payment for design and construction of a new library.

   57.   Notwithstanding the City's representations, it has nonetheless asserted and continues to assert that RCEC is and will be responsible for payment amounts not permitted under the parties' Agreement.

   58.   As a proximate result of the City's course of action in direct contradiction to its representations made to RCEC, RCEC has and will continue to suffer general and special damages as alleged in this Complaint in an amount subject to proof at trial.

   59.   For all of these reasons, RCEC seeks an order from this Court directing specific performance of the Agreement.

   60.   In the alternative, RCEC seeks damages in an amount subject to proof at trial.

**THIRD CLAIM FOR RELIEF**
(Anticipatory Repudiation)

   61.   RCEC repeats and realleges each and every allegation of paragraphs 1 through 60 of this Complaint as though fully set forth here.

   62.   The City's April 4, 2011 threat to impose additional charges on RCEC proscribed by the express terms of the Agreement is a breach and repudiation of the City's obligations under the Agreement.

   63.   The City's wrongful conduct, including its breach and repudiation of the Agreement, has rendered RCEC insecure and uncertain about its past and future investments to operate and maintain the Energy Center.  Such wrongful conduct by the City has also left RCEC uncertain about its legal responsibility to perform the balance of its obligations under the Agreement, given the

City's past acts of breach as alleged in this Complaint and its continuing threats to impose additional charges on RCEC. The City's breach of its obligations under the Agreement and its continuing threats to apply further charges to RCEC and the operations of the Energy Center have significantly changed and adversely affected numerous economic and other financial assumptions made by RCEC at the time it agreed to enter into the Agreement with the City and to commence development of the Energy Center.

64. At the time RCEC became aware of the City's acts of breach, RCEC had performed its conditions and covenants required of it under the Agreement and was ready, able, and willing to complete all performance required on its part.

65. As a result of the City's breach of the Agreement, RCEC has been damaged in an amount subject to proof at trial.

66. RCEC, therefore, seeks specific performance of the Agreement.

67. In the alternative, RCEC seeks damages.

**FOURTH CLAIM FOR RELIEF**
(Violation of the Contracts Clause, U.S. Const., Cal. Const. & 42 U.S.C. § 1983)

68. RCEC repeats and realleges each and every allegation of paragraphs 1 through 67 of this Complaint as though fully set forth here.

69. RCEC hereby seeks damages, as well as declaratory, equitable and injunctive relief to prevent the City from violating, and continuing to violate, the Contract Clause of the United States Constitution (U.S. Const., Art. I, § 10, cl. 1) and California Constitution (Cal. Const. Art. I, § 9). This claim is also brought pursuant to 42 U.S.C. §§ 1983 and 1988(b).

70. The Agreement between the City and RCEC is an enforceable contract, under which, RCEC has undertaken the development, construction and operation of the Energy Center and made a payment to the City of $10,000,000, ostensibly for the purpose of "the City's design and construction of a new library," all in exchange for, among other things, the City's promise not to impose other levies, fees, taxes, contributions or charges on RCEC, aside from those expressly authorized under the Agreement.

71. Article I, section 10, clause 1 of the United States Constitution, among other things,

prohibits any state from passing any "law impairing the obligation of contracts . . . ." The California Constitution secures an identical state constitutional protection in Article I, section 9, which provides that a "law impairing the obligation of contracts may not be passed."

72. Acting under the color of state law, the City has caused RCEC to suffer a substantial deprivation of its contract rights in violation of the United States and California Constitutions. The City's attempt to require RCEC to pay UUT assessments for any past, current, and/or future operation of the Energy Center is an unconstitutional depravation of RCEC's rights which effectively results in the imposition of other levies, fees, taxes, contributions, or charges on RCEC, over and above those expressly allowed under the terms of the Agreement. This constitutes a substantial and direct impairment to the express and implied terms of the Agreement, in violation of Article I, section 10, clause 1 of the United States Constitution and the California Constitution. The imposition and threatened imposition of UUT assessments against RCEC effectively nullifies the City's obligations under section 6(c) of Agreement by imposing and threatening to impose unexpected and new liabilities and limitations on the exercise of RCEC's contractual rights under the Agreement, which related obligations and covenants RCEC has already substantially performed. In essence, through its unilateral change of the parties' Agreement, the City is now double charging RCEC for the freedom to exercise its previously bargained for and agreed contractual rights and threatening to impose additional charges against RCEC for the right to operate the Energy Center in the future.

73. As a direct and proximate result of the City's unconstitutional impairment of RCEC's contractual rights under the Agreement, RCEC has suffered and will continue to suffer damages. Among other things, RCEC has been damaged generally and specially through the loss and the potential future loss of its funds advanced to plan, design, permit, construct, test and operate the Energy Center.

74. RCEC has also been damaged by paying $10,000,000 to the City ostensibly for "the City's design and construction of a new library," as required under the Agreement.

75. As a result of the City's unconstitutional acts and the substantial depravation of RCEC's rights, RCEC has been damaged.

76. RCEC, therefore, seeks specific performance of the Agreement.

77. In the alternative, RCEC seeks damages.

78. RCEC has incurred and will continue to incur attorneys' fees and costs because of the City's unlawful actions in amounts that cannot yet be ascertained. RCEC is entitled to recover its attorneys' fees and costs pursuant to the Agreement and 42 U.S.C. §§ 1983 and 1988(b).

**FIFTH CLAIM FOR RELIEF**
(Declaratory Relief)

79. RCEC repeats and realleges each and every allegation of paragraphs 1 through 78 of this Complaint as though fully set forth here.

80. A judicial declaration is reasonable and necessary in this action because a dispute and actual controversy now exists between RCEC and the City with respect to how to interpret the Agreement, as alleged in this Complaint.

81. Declaratory relief is appropriate because a conflict of rights and justiciable controversy exists between RCEC and the City concerning the interpretation of the Agreement.

82. A judicial declaration is also reasonable and necessary at this time because the parties further dispute and disagree whether the City's wrongful retention of fees and monies already paid to the City by RCEC under the Agreement, including the $10,000,000 payment made by RCEC, and RCEC's other performance under the Agreement, would unjustly enrich the City.

83. RCEC therefore requests a declaratory judgment from this Court pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 that, as a matter of law, the City's conduct as alleged in this Complaint constitutes a breach of the Agreement.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff RCEC prays for judgment against Defendant City of Hayward as follows:

    A. On the First, Second, Third, and Fourth Claims for Relief, specific performance of the Agreement, to wit, an order directing the City to comply with the terms of the Agreement, including but not limited to not assessing the UUT against RCEC, remedies of law being inadequate;

B. In the alternative, a judgment awarding damages in an amount according to proof;

C. On the Fifth Claim for Relief, a judgment in favor of RCEC and against the City declaring the City breached the Agreement;

D. On all Claims for Relief, a judgment declaring RCEC the prevailing party in this action and awarding RCEC:

    a. all reasonable and necessary attorneys' fees, costs and all out of pocket expenses incurred in the prosecution of this action as the prevailing party under Section 21 of the Agreement, as provided for under California Civil Code § 1717 or as may otherwise be allowable under law;

    b. pre- and post-judgment interest at the maximum rate allowable by law; and,

    c. such other and further relief as the Court may deem appropriate.

Dated: July 9, 2014　　　　　　　　　　　WINSTON & STRAWN LLP

By: /s/ Robb C. Adkins
    Robb C. Adkins
    Charles J. Moll III
    Krista M. Enns
    Attorneys for Plaintiff
    RUSSELL CITY ENERGY COMPANY, LLC,
    a Delaware limited liability company